BIDWELL et al. v. HUFF et al.

(Circuit Court, S. D. Georgia, W. D.   December 10, 1909.)

1. JUDICIAL SALES (§ 35*)—CONFIRMATION—DISCRETION.

Where a judicial sale has been conducted in good faith and in accordance with provisions made for notice, etc., and has brought a satisfactory price, it will not be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining parties before the sale.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 72, 73; Dec. Dig. § 35.*]

2. JUDICIAL SALES (§ 35*)—VACATION—GROUNDS.

It was no reason for vacating a judicial sale that two of the defendants had an undivided two-sevenths interest in the property, and that they were not entitled to have their interests adjusted.

[Ed. Note.—For other cases, see Judicial Sales, Dec. Dig. § 35.*]

In Equity. Suit by William L. Bidwell and another against W. A. Huff and others. On objections to the report of commissioners praying for the confirmation of a judicial sale. Objections overruled, and confirmation granted.

Dupont Guerry and T. S. Felder, for objectors.
O. J. Wimberly and T. E. Ryals, for respondents.

SPEER, District Judge (orally). The law upon this subject, as announced by the Supreme Court of the United States, by Mr. Justice Brewer, in Pewabic Min. Co. v. Mason, 145 U. S. 356, 12 Sup. Ct. 888 (36 L. Ed. 732) is as follows:

"The question in this case is whether the master's sale shall stand. It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and conditions of such a sale, as well as to the ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will in his judgment best protect the rights of all interested and make the sale most profitable to all; and, after a sale has once been made, he will certainly, before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted. Yet the purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto."

That being the law, what are the facts here? Every precaution was taken by the court to insure that this property should be placed on the market in a manner entirely just to all concerned, and the provisions in the decree indicate as much. The actions of the commissioners were in strict compliance with every essential provision of the decree. It is true that they were required in one clause not to sell the property as an entirety; it being the purpose of the court that they should not endanger the values by combinations to chill the bidding and secure the property at an inadequate price. It is true, however, that in another clause it was provided that they should divide the property up into lots (and how it should be divided was intrusted to their discretion), and, having thus divided it, that they should first offer those lots

and hear the bids; then they were directed to sell the property as an entirety, and to accept the result if it was to the best interest of the parties, notwithstanding the previous sale of the independent lots. Both of these features must be construed together, to correctly understand the decree. This plan was followed. Ample advertisement was made, not only that required by law, but special and costly display advertisements in papers of wide circulation to attract the attention of possible purchasers; and unless the court is to declare that nearly every real estate dealer in this city is without sufficient intelligence to determine or pass upon the value of the commodity in which he deals, this property has brought a magnificent price—the sum of $70,700. Indeed, several expressed their surprise at the high figure the property brought. Other evidence is convincing that at various times in the course of the proceeding, Mr. Huff, the principal defendant, was willing to sell particular lots and parcels, comprising the bulk of this property, at much less than the commissioners obtained by their public sale.

It is insisted that two of the defendants cannot now have their interests adjusted; that they have an undivided two-sevenths interest in some of this property. If that is true, and the court does not pass upon that now, it is ascribable to the fact that they have executed liens upon their undivided interest in the property, and the only possible way to have their equities determined was to have the property sold under the decree, long ago settled by all the courts, and their claim to a proportionate share of the proceeds finally settled. It is difficult for the court to perceive how their alleged rights to two-sevenths of the proceeds of the specified property can be jeopardized by the sale. If we were to set aside this sale on these grounds, we would be precisely where we were before the sale was made, with no better opportunity of adjusting those values then than we have now. Besides, we would run the risk of forfeiting a most advantageous sale.

I cannot regard these objections as meritorious in any sense. The case has been here for more than ten years. The defendant has utilized every possible expedient of the law to delay the righteous claims of his creditors. Whether these properties were bought with moneys which were raised by means of these various liens, which have now been enforced, I do not now recall. Certain it is that the validity of none of these debts thus secured has been successfully disputed. Besides, there are numerous liens for large amounts for taxes past due for many years, plastering the whole property. These could not have been adjusted and apportioned without a sale of the property.

This court, the Circuit Court of Appeals, and the United States Supreme Court have considered, weighed, passed upon, and determined every question in the case. I will not say that these objections are intended simply for delay, but certainly, if maintained, they would have no other effect than to delay the adjustment of this vast mass of proven indebtedness. The delay to the present time might have been cited by those who are accustomed to criticise the courts as an illustration of one of the greatest wrongs in our modern civilization; that is, the law's delay. The court has done all in its power, with an earnest regard for the rights of the creditors, to force the long drawn out

litigation to a prompt determination, but always with the kindest consideration proper toward the defendant. I know of no civil case in which there have been such unwarrantable, but unavoidable, delays. It is the right of the creditors, and the interest of the government and the people, that there should be an end to this litigation.

There is nothing in the objections which would make hesitation to approve this sale proper. It must be approved, and an order can be taken accordingly.